UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA HENDRICK,

Plaintiff,

-against-

COUNTY OF WESTCHESTER, SERGEANT MATEO, and JOHN AND JANE DOES 1-20,

Defendants.

25-cv-6294 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Joshua Hendrick brings this action against Defendants County of Westchester; Sergeant Mateo; and John and Jane Does 1-20. Plaintiff asserts claims under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of the Fourth, Eighth, and Fourteenth Amendments, as well as related claims under New York law.

Presently before the Court is the motion of Defendants County of Westchester and Sergeant Mateo (together, "County Defendants," as that term is used in this Opinion) to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[1] (ECF No. 12.) For the following reasons, the motion is GRANTED in part and DENIED in part.

**BACKGROUND**

**I. Factual Background**

The following facts are drawn from Plaintiff's Complaint and are accepted as true for the purposes of this motion. (ECF No. 1, "Compl.") *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[1] The Complaint uses that term more broadly to include the John and Jane Doe Defendants, who have not appeared; the dismissals ordered below run only to County Defendants.

Plaintiff alleges that he was housed at Westchester County Department of Correction ("Westchester DOC") as a federal pretrial detainee while serving a sentence related to a state conviction. (Compl. ¶ 24.) Plaintiff further alleges that he had three paid jobs at Westchester DOC, one of which involved cleaning the Booking section. (*Id.* ¶¶ 25-26.) On May 7, 2024, Plaintiff was cleaning the Booking area when he encountered an active ceiling leak. (*Id.* ¶¶ 27, 29.) The floor beneath the leak was covered with blankets, some of which were wet, and buckets had been placed under portions of the ceiling. (*Id.* ¶¶ 31-33.) Plaintiff also alleges that ceiling tiles and camera equipment had fallen from the ceiling and that multiple County employees walked within view of the condition. (*Id.* ¶¶ 34-35.)

Plaintiff alleges that a John Doe Defendant instructed him to make the area safe, which required him to clean the floor in and around the leak. (*Id.* ¶¶ 36-38.) While doing so, Plaintiff observed that a ceiling tile above the area he had been instructed to clean was out of place. (*Id.* ¶¶ 40-41.) Plaintiff attempted to slide the tile back into place with the end of his broomstick, and the tile appeared to move back into place. (*Id.* ¶¶ 45-46.) When Plaintiff resumed cleaning, multiple pieces of ceiling tile fell, striking his shoulder and head and causing him to fall into a wall. (*Id.* ¶¶ 52-55.) Plaintiff then sought medical attention in the clinic adjacent to the Booking section. (*Id.* ¶ 56.)

Plaintiff alleges that Sergeant Mateo and other John Doe Defendants claimed Plaintiff deliberately caused the ceiling to collapse and ordered him returned to his housing unit. (*Id.* ¶¶ 58, 61.) Plaintiff allegedly asked to go to the hospital but was refused. (*Id.* ¶¶ 62-63.) The next day, Plaintiff again requested medical care and was taken to Westchester County Medical Center, where he received an x-ray, was diagnosed with a shoulder strain, and was given documentation

reflecting a shoulder sprain. (*Id.* ¶¶ 70-74.) Plaintiff was also given a sling and pain medication. (*Id.* ¶ 74.)

Plaintiff further alleges that, after less than one week, John Doe Defendants asked medical personnel to cancel his permission to wear the sling, and medical personnel agreed. (*Id.* ¶¶ 119-21.) Plaintiff alleges he had not healed enough to stop using the sling. (*Id.* ¶ 121.) Although Plaintiff was allegedly supposed to receive physical therapy at least once per week, he received only two or three sessions during a three-month period, and his condition worsened. (*Id.* ¶¶ 128-30.)

Plaintiff also alleges that an MRI was delayed. According to the Complaint, Plaintiff was scheduled to be evaluated on May 18, 2024, but John and Jane Doe Defendants falsely reported that Plaintiff refused to leave his housing unit to go to medical. (*Id.* ¶¶ 131-34.) An MRI was not requested until June 28, 2024, and Plaintiff alleges it showed that his condition had worsened, including fluid collection in his shoulder. (*Id.* ¶¶ 138, 141-45.) Plaintiff alleges he later required an injection and continues to experience shoulder pain and related symptoms. (*Id.* ¶¶ 146-51.)

Finally, Plaintiff alleges that County Defendants issued a disciplinary report charging him with deliberately destroying County property, disorderly conduct, and making false statements. (*Id.* ¶¶ 76-78.) Several days later, Plaintiff was brought to a disciplinary hearing. (*Id.* ¶ 82.) Plaintiff alleges he had no advance notice of the hearing, could not call witnesses, could not review the evidence against him, and could not view video footage of the incident. (*Id.* ¶¶ 83-96.) Plaintiff was found guilty of two of the three charges and allegedly lost his ability to work at Westchester DOC. (*Id.* ¶¶ 98-99.)

### II. Procedural History

Plaintiff commenced this action by filing the Complaint on July 31, 2025. (ECF No. 1.) On December 29, 2025, Defendants filed their motion to dismiss (ECF No. 12), memorandum of law in support (ECF No. 14, "Defs. Mem."), and reply (ECF No. 17, "Defs. Reply"). Plaintiff filed his opposition that same day. (ECF No. 15, "Pl. Opp.")

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for the unlawful activity alleged. *Iqbal*, 556 U.S. at 678. "In considering a motion to dismiss for failure to state a claim, the district court is normally required to look only to the allegations on the face of the complaint…the court may [also] consider documents that are attached to the complaint, incorporated in it by reference, [or] integral to the complaint." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quotation marks omitted).

In assessing the sufficiency of the claims, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678-79. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678.

## II. 42 U.S.C. § 1983

Section 1983 provides that every person who, under color of any state law, subjects any citizen of the United States to the deprivation of rights secured by the Constitution and federal laws "shall be liable to the party injured." 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by the Constitution and federal statutes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

To state a claim under Section 1983, a plaintiff must allege that (1) the challenged conduct was attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution. *See Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *see also Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution"). A defendant's conduct must also be a proximate cause of the alleged violation. *Ross v. Correct Care Solutions*, 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012) (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)).

Individual liability under Section 1983 requires personal involvement in the alleged constitutional deprivation; a defendant may not be held vicariously liable for the acts of others. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Lindsey v. Butler*, 43 F. Supp. 3d 317, 323 (S.D.N.Y. 2014). Municipal liability, in turn, arises only where an official policy, custom, or practice causes the alleged constitutional injury, as § 1983 does not permit liability on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). To

establish *Monell* liability, a plaintiff must show both the existence of a municipal policy or custom and a direct causal link between that policy and the alleged deprivation. *Cuellar v. Love*, No. 11-CV-3632 (NSR), 2014 WL 1486458, at *9 (S.D.N.Y. Apr. 11, 2014). Isolated acts by non-policymaking employees are insufficient; only decisions of final policymakers or actions taken pursuant to official policy may subject a municipality to liability. *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

## DISCUSSION

Plaintiff asserts claims for: (1) Section 1983 constitutional violations; (2) municipal liability[2]; (3) procedural due process; (4) negligence; (5) negligent hiring, training, supervision, and retention; (6) intentional and negligent infliction of emotional distress; and (7) violations of the New York State Constitution and abuse of process. The Court addresses each in turn.

### I. 42 U.S.C. § 1983 Constitutional Claims

Plaintiff alleges a dangerous condition in the Westchester DOC, whereby there was an active ceiling leak, wet blankets covering the floor underneath the leak, and ceiling materials and tiles falling. (Compl. ¶¶ 29-35.)

As a threshold matter, Plaintiff's Section 1983 claims require defendant-specific analysis. The Complaint often refers collectively to "County Defendants" or "Defendants," but individual liability requires personal involvement by each individual defendant, and the County may be liable under Section 1983 only if Plaintiff satisfies *Monell*. Accordingly, the Court separates the allegations against Sergeant Mateo from those against the unidentified Doe Defendants and addresses the County's municipal liability separately below. The Court first considers Plaintiff's substantive constitutional theories.

[2] County Defendants have withdrawn their PLRA exhaustion argument for purposes of this motion and reserve it for a later stage. (Defs. Reply at 6.) Accordingly, the Court does not dismiss any claim for failure to exhaust at this time.

**A. Deliberate Indifference to Safety**

Because Plaintiff was a pretrial detainee during the events alleged (Compl. ¶ 24), a characterization County Defendants adopt in their briefing (Defs. Mem. at 1, 7-8), his deliberate-indifference claims arise under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To plausibly assert such a claim, a plaintiff must allege that the challenged condition was sufficiently serious to constitute an objective deprivation of a right to due process and that the defendant acted with deliberate indifference to the challenged conditions. *Id.*

Here, the Complaint alleges an active ceiling leak, wet blankets, buckets, prior fallen ceiling materials, and fallen camera equipment. (Compl. ¶¶ 29-35.) While, at first glance, the allegations support a reasonable inference that the condition presented more than a minor maintenance issue, and that the defendants were aware of the condition, the claim does not rise to the level of a constitutional violation. It is well settled that the Due Process Clause is not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986). Courts in this Circuit have routinely held that conditions such as wet floors that cause an inmate or detainee to slip and fall, resulting in an injury, at best amount to simple negligence. *Lovelady v. Otis Bantum Corr. Facility Rikers Island*, No. 24-CV-9646 (KMW), 2025 WL 2201064, at *2 (S.D.N.Y. July 29, 2025) (collecting cases); *see also Strange v. Westchester Cnty. Dep't of Corr.*, No. 17-CV-9968 (NSR), 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018) (holding that plaintiff's claim under the Eighth or Fourteenth Amendments that he slipped and fell while exiting the shower failed to satisfy the first prong of a conditions-of-confinement claim). Generally, liability for injuries sustained as a result of a ceiling collapse due to a leak is analyzed under common law negligence, requiring a plaintiff to

demonstrate that the "defendant had prior notice, actual or constructive, of the leak and that the leak was never repaired." *Ellisy v. Eklecco, LLC*, 56 A.D.3d 517, 517 (2d Dep't 2008) (quoting *Figueroa v. Goetz*, 5 A.D.3d 164, 165 (1st Dep't 2004)).

Plaintiff relies on *Mowatt v. City of New York*, No. 15 Civ. 10104 (ER), 2017 WL 1050121, at *3 (S.D.N.Y. Mar. 17, 2017), which collected cases holding that a damaged jail ceiling that collapses on a detainee may satisfy the objective prong. (Pl. Opp. at 12.) Even assuming the condition here was objectively serious, the Complaint does not plausibly allege the required mens rea. By Plaintiff's own account, the tiles fell only after he pushed a displaced one back into place with his broomstick. (Compl. ¶¶ 45-47, 52.) Nothing in the Complaint alleges that any Defendant knew those tiles were saturated or saw him move them, and the allegations that Defendants were on notice of "the full scope of the risks" and that a John Doe Defendant stood nearby are conclusory as to the risk that materialized. (*Id.* ¶¶ 35, 39, 49.) At most, these allegations describe a failure to inspect or warn: negligence, not the conscious disregard of a known or obvious risk that *Darnell* requires. Accordingly, the claim is dismissed without prejudice as to County Defendants.

The claim is similarly dismissed as against Sergeant Mateo for an additional reason. In order to be individually liable under Section 1983, the named defendant must have personal involvement in the alleged constitutional deprivation. *Farrell v. Burke,* 449 F.3d at 484. A defendant may not be held vicariously liable for the acts of others. *Id*. The Complaint alleges that Mateo was assigned to the Booking section and later claimed Plaintiff caused the collapse, but it does not plausibly state that Mateo personally instructed Plaintiff to clean near the leak, inspected the ceiling, knew the tiles were waterlogged, or otherwise personally exposed Plaintiff to the risk. (*Id*. ¶¶ 28, 36, 58, 61.) Accordingly, the allegations are insufficient to support a finding of personal involvement.

**B. Deliberate Indifference to Medical Needs**

Plaintiff also asserts deliberate indifference to medical needs based on shoulder, head, and back injuries, pain, use and cancellation of a sling, delayed physical therapy, a delayed MRI, and the possibility of surgery. (Compl. ¶¶ 53-55, 72, 74, 129, 141, 152.)

To state a deliberate-indifference claim based on medical care, a plaintiff must allege both a sufficiently serious medical need and the mens rea element set forth above. *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006); *see Charles v. Orange Cnty.*, 925 F.3d 73, 86–87 (2d Cir. 2019) (deliberate indifference "means the same thing for each type of claim under the Fourteenth Amendment" (quoting *Darnell*, 849 F.3d at 33 n.9)). A medical need may be sufficiently serious where it causes chronic and substantial pain, significantly affects daily activities, or would be considered important by a reasonable doctor or patient. *Salahuddin*, 467 F.3d at 280 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Assuming Plaintiff's shoulder injury qualifies as sufficiently serious, the Complaint does not state a medical-deliberate-indifference claim against Mateo. Mateo's alleged involvement is limited to claiming Plaintiff caused the collapse, ordering him returned to housing, and refusing his immediate request to go to the hospital. (Compl. ¶¶ 58, 61–63.) Plaintiff was taken to Westchester County Medical Center the next day, where he received an x-ray, sling, and pain medication. (*Id*. ¶¶ 70–74.) The Complaint does not allege facts showing that this short delay caused additional harm or that Mateo knew or should have known that returning Plaintiff to housing created an excessive risk to Plaintiff's health. The later allegations concerning cancellation of the sling, physical therapy, MRI scheduling, and an injection are directed principally at medical personnel, Wellpath-related Doe Defendants, or unidentified John and Jane Doe Defendants, not Mateo. (*See, e.g., id.* ¶¶ 119–21, 128–34, 138, 141–48.) To the extent Plaintiff seeks to impose

liability on the County for medical-care delays, that theory must proceed, if at all, through *Monell*. Accordingly, the deliberate-indifference-to-medical-needs claim is dismissed as to Mateo without prejudice.[3]

**C. Excessive Punishment/Substantive Due Process**

Plaintiff's excessive-punishment/substantive-due-process theory is duplicative of his other constitutional claims. Plaintiff alleges excessive punishment in the form of losing his job and wages, being sent into an unsafe working environment, being falsely blamed for getting injured, and being disciplined unjustly. (Compl. ¶¶ 82-102.) To the extent Plaintiff challenges the unsafe work assignment, that theory is addressed as deliberate indifference to safety. To the extent he challenges the allegedly false disciplinary charges and loss of work privileges, that theory is addressed as procedural due process. Accordingly, the separate excessive-punishment/substantive-due-process theory is dismissed with prejudice as duplicative.

**D. Failure to Intervene**

The failure-to-intervene claim is conclusory. (Compl. ¶¶ 231, 238.) The Complaint does not identify a particular Defendant who observed an ongoing constitutional violation, had a realistic opportunity to prevent it, and failed to do so. The claim is therefore dismissed without prejudice.

**E. Fourth Amendment**

The Complaint does not plead a Fourth Amendment search-or-seizure theory. Although the Complaint references the Fourth Amendment, the factual allegations concern unsafe conditions, medical care, discipline, and due process. The Fourth Amendment theory is therefore dismissed with prejudice.

[3] Because those Defendants likewise have not appeared and are not among the County Defendants, the Court does not address the sufficiency of the medical-care allegations against them on this motion.

## II. *Monell* Liability

Plaintiff alleges several municipal policies or customs, including using detainees to perform unsafe work, failing to maintain safe jail conditions, delaying medical care through Wellpath or outside-approval procedures, maintaining deficient disciplinary practices, and failing to train or supervise employees. (Compl. ¶¶ 249-72.) However, "a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. The Complaint largely relies on Plaintiff's own incident and conclusory assertions of County policy. It does not identify a formal County policy, a widespread and persistent practice, a final policymaker's decision, or facts showing a pattern of similar constitutional violations sufficient to support a failure-to-train or failure-to-supervise theory. *Edrei v. City of N.Y.*, 254 F. Supp. 3d 565, 579 (S.D.N.Y. 2017). Nor may the County be held liable merely because it employed the alleged individual wrongdoers. Accordingly, the *Monell* claim is dismissed without prejudice.

## III. Fourteenth Amendment Procedural Due Process

Plaintiff alleges that he was deprived of due process through false disciplinary charges, an erroneous guilty finding, the loss of his jail work assignments and wages, and the alleged use of the incident in his criminal sentencing. (Compl. ¶¶ 76-113.)

The Fourteenth Amendment provides, in relevant part, that "[n]o State shall…deprive any person of life, liberty, or property, without due process of law…" U.S. Const. amend. XIV, § 1. "In order for a plaintiff to state plausibly a claim for violation of his Fourteenth Amendment procedural due process rights, he must: (1) identify a protected liberty interest; and (2) identify the procedure that deprived him of that liberty interest." *Marcus v. Annucci*, 2022 WL 280935, at *7 (S.D.N.Y. Jan. 31, 2022) (citing *Linares v. Annucci*, 2021 WL 2689736, at *7 (S.D.N.Y. June 30, 2021)).

As to the first element, "the threshold issue is…whether the plaintiff has a property or liberty interest protected by the Constitution." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510 (S.D.N.Y. 2012) (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)). Regarding prison disciplinary proceedings, an incarcerated individual's liberty interest is implicated only if the sentence given "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Washington v. Afify*, 681 F. App'x 43, 45 (2d Cir. 2017) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)).

Plaintiff alleges he lost his jail work assignment as a result of the hearing following the incident. (Compl. ¶ 99.) However, this is not a protected interest. Generally, inmates do not have a constitutionally protected interest in an assignment to a particular prison job or participation in a particular program absent a state regulation and a showing that the deprivation of employment imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *See Taylor v. Levesque*, 246 F. App'x 772, 774 (2d Cir. 2007); *see also Richard v. Fischer*, 38 F. Supp. 3d 340, 352 (W.D.N.Y. 2014) ("[T]he Constitution does not create a property or liberty interest in prison employment"). By the same reasoning, Plaintiff, a New York State inmate, does not have a protected interest in future wages. *See Semkus v. Coughlin*, 139 A.D.2d 868, 527 N.Y.S.2d 596 (3d Dep't 1988) (concluding that plaintiff was not entitled to recover wages lost due to the reduction in his work schedule or constitutional right to a prison job).

Furthermore, Plaintiff cannot maintain a constitutional claim based solely on the allegedly false disciplinary report. A detainee "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Castillo v. Snedeker*, 2024 WL 3346021, at *2 (S.D.N.Y. July 8, 2024) (quoting *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997)). In fact, "to maintain a cognizable claim against correction officers for filing a false misbehavior report, 'a plaintiff must

be able to show either: (1) that he was disciplined without adequate [procedural] due process, as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right.'" *Louime v. Lamanna*, 2023 WL 1385180, at *6 (S.D.N.Y. Jan. 31, 2023) (citing *Allen v. City of N.Y.*, 480 F. Supp. 2d 689, 721 (S.D.N.Y. 2007)).

Because Plaintiff does not allege a protected liberty or property interest in his jail work assignment or wages, and because the allegedly false disciplinary report alone does not state a due process claim, the procedural due process claim is dismissed with prejudice to the extent it is premised on the loss of Plaintiff's jail work assignment or wages. The Complaint also recites an interest in property or funds taken from Plaintiff as penalties, but pleads no facts describing any such deprivation; that theory is dismissed without prejudice.[4] (Compl. ¶¶ 275, 278.)

**IV. Negligence**

Plaintiff alleges that Defendants caused, created, and/or contributed to, by reason of their negligence, the hazardous condition at Westchester DOC. (Compl. ¶¶ 285-97.) "The same duty of care that is owed to individuals who use the State's highways, public buildings, and parks is owed to those who inhabit the State's correctional institutions." *Seaman v. State*, 21 Misc. 3d 1111(A), 873 N.Y.S.2d 515 (Ct. Cl. 2006); *see also Kandrach v. State,* 188 A.D.2d 910, 912 (1992). To plausibly allege a negligence claim for an unsafe premises, Plaintiff "must [allege] (1) the existence of a dangerous condition; (2) that the State either created the dangerous condition or had actual or constructive notice of it; (3) that the State failed to remedy this danger within a reasonable period of time; and (4) that the dangerous condition caused the injuries in question." *Id.*

[4] The Complaint's due process paragraphs also recite an interest in "the privileges, property and/or funds wrongfully taken from him by Defendants as penalties," but plead no facts concerning any such penalty. (Compl. ¶¶ 275, 278.) Plaintiff represents, however, that Defendants assess a fine in connection with disciplinary reports and requests leave to plead that fact. (Pl. Opp. at 18 n.2.) Because a deprivation of money already belonging to a detainee is distinct from the prison employment and future wages addressed above, the dismissal does not foreclose an amended pleading advancing that theory. The Court expresses no view on whether such a deprivation would constitute a protected property interest, an issue the parties have not briefed.

Here, the negligence claim is adequately pleaded against the County. The Complaint alleges a dangerous condition, actual or constructive notice through the visible leak, blankets, buckets, and fallen ceiling materials, failure to inspect or warn, and injury caused by the falling ceiling tiles. (Compl. ¶¶ 29-56, 285-97.) Accordingly, the negligence claim survives as against the County. The Complaint does not, however, allege that Mateo created the dangerous condition or personally directed Plaintiff to clean beneath it; any negligence claim against Mateo is therefore dismissed without prejudice.[5]

**V. Negligent Hiring, Training, Supervision, and Retention**

Plaintiff alleges that the County knew or should have known Wellpath was unfit to provide healthcare at Westchester DOC and that the County failed to train, supervise, or monitor its personnel. (Compl. ¶¶ 302, 305-07.) Claims alleging a municipality's failure to train, supervise or monitor its personnel are generally asserted pursuant to *Monell*. The allegations as asserted are conclusory. "Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention." *Karoon v. N.Y.C. Transit Auth.*, 241 A.D.2d 323, 324 (1st Dep't 1997). Here, Plaintiff does not allege facts showing that the County knew or should have known of any employee's propensity to commit the relevant misconduct, nor does he identify specific training or supervision failures apart from the incident itself. The negligent hiring, training, supervision, and retention claim is therefore dismissed without prejudice.

[5] To the extent Plaintiff pleads negligence per se, he concedes that the citation to the HALT Act was made in error and states that he will replead the theory under the Correction Law provision requiring that persons committed to a county jail be "safely kept." (Pl. Opp. at 23.) Plaintiff's papers cite § 500-c(5); the "safely keep" duty appears at § 500-c(4). The Court expresses no view on whether that provision will support a negligence per se theory. The negligence per se theory is dismissed without prejudice.

## VI. IIED and NIED

### A. IIED

Plaintiff alleges intentional infliction of emotional distress ("IIED") by Defendants' alleged actions and omissions. (Compl. ¶ 311.) Under New York law, IIED requires "(1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress." *Davydov v. Youssefi*, 205 A.D.3d 881, 883 (2d Dep't 2022). "[T]he pleading must allege conduct that has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* The conduct addressed above does not rise to the level required for IIED under New York law, and it is also duplicative of Plaintiff's other negligence and constitutional theories. In addition, New York public policy bars IIED claims against governmental entities. *See Dillon v. City of New York*, 261 A.D.2d 34, 41 (1st Dep't 1999). Therefore, this claim is dismissed with prejudice as to the County and without prejudice as to the individual Defendants.

### B. NIED

Plaintiff also asserts negligent infliction of emotional distress ("NIED"). (Compl. ¶¶ 310-17.) Under New York law "a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021).

Here, Plaintiff alleges that Defendants endangered his physical safety by requiring him to

clean near an unsafe ceiling leak, causing ceiling tiles to fall and strike him. (Compl. ¶ 311.) Those allegations may support Plaintiff's ordinary negligence claim, but they do not state a separate NIED claim. The NIED claim is based on the same alleged duty, breach, dangerous condition, and resulting injuries as the negligence claim. New York courts dismiss NIED claims as duplicative where they arise from the same facts and seek recovery for the same injury as a negligence claim. *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 364 (S.D.N.Y. 2021); *Djangmah v. Falcione*, 2013 WL 208914, at *9 (S.D.N.Y. Jan. 18, 2013) (quoting *Wolkstein v. Morgenstern*, 275 A.D.2d 635, 713 N.Y.S.2d 171 (1st Dep't 2000)); *Richardson v. City of New York,* 2015 WL 7752143, at *19 (S.D.N.Y. Nov. 18, 2015). Accordingly, Plaintiff's NIED claim is dismissed with prejudice.

## VII. New York State Constitution and Abuse of Process

Plaintiff alleges a violation of his rights pursuant to New York State Constitution Article I, Sections Five (punishments), Six (protection of certain enumerated rights), Eight (freedom of speech), Nine (right to assemble and petition), Eleven (equal protection of laws; discrimination in civil rights prohibited), and Twelve (security against unreasonable searches, seizures and interceptions). (Compl. ¶ 320.) Likewise, he claims abuse of process under Section 1983 and New York State law. (Compl. ¶¶ 330-35.) The Court addresses these theories separately.

"Courts in this Circuit have uniformly held that no private right of action exists for violations of the New York State Constitution where the Plaintiff has an alternative remedy under Section 1983 for violations of parallel provisions of the United States Constitution." *Smith v. City of Syracuse*, No. 5:24-CV-1523 (GTS/CBF), 2026 WL 775946, at *7 (N.D.N.Y. Mar. 19, 2026) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 408 (S.D.N.Y. 2021)). To the extent Plaintiff asserts state constitutional claims that parallel his federal constitutional claims, those claims are dismissed with prejudice because Plaintiff has adequate alternative remedies under

Section 1983 and New York tort law. *See Buari,* 530 F. Supp. 3d at 408. Plaintiff's abuse-of-process claim is also dismissed. To state an abuse-of-process claim under New York law, a plaintiff must allege that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). Plaintiff appears to rely on the disciplinary report, disciplinary hearing, and alleged use of the incident to blame the Defendants for the ceiling collapse. (Compl. ¶¶ 76-98.) But Plaintiff does not adequately allege that any of the individually named Defendants improperly used regularly issued legal process to pursue a collateral objective outside the legitimate ends of that process. Nor does the Complaint tie Sergeant Mateo or any identified Doe Defendant to the alleged misuse of process with sufficient specificity. The abuse-of-process claim is therefore dismissed without prejudice.

## VIII. Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff has requested leave to amend.[6]

The Court grants Plaintiff leave to amend as to the claims dismissed for pleading deficiencies, including his deliberate-indifference-to-safety claim, his procedural due process claim, to the extent premised on deprivation of funds or other property, his deliberate-indifference-to-medical-needs claim, his failure-to-intervene claim, his *Monell* claim, his negligent hiring, training, supervision, and retention claim, his negligence and negligence per se claims against Sergeant Mateo, his IIED claim against the individual Defendants, and his abuse-of-process claim. Because amendment may allow Plaintiff to plead additional facts concerning personal

[6] Plaintiff requested the opportunity to amend in a footnote in his Memorandum in Opposition. (Pl. Opp. at 18 n.2.)

involvement, the individual Defendants' knowledge of the hazard, municipal policy or custom, causation, the assessment of any fine or other monetary penalty, the nature of the process employed, the conduct alleged to be extreme and outrageous, and the specific role of the Doe Defendants, dismissal of those claims is without prejudice.

However, Plaintiff's Fourth Amendment claim, procedural due process claim based on the loss of his jail work assignment or wages, substantive due process/excessive punishment theory, NIED claim, IIED claim against the County, and New York State constitutional claims are dismissed with prejudice because the defects are legal rather than factual and amendment would be futile.

**CONCLUSION**

For the foregoing reasons, County Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's common law negligence claim against the County survives.

Dismissed with prejudice are Plaintiff's Fourth Amendment, substantive due process/excessive punishment, and NIED claims; his IIED claim against the County; and his New York State constitutional claims. Dismissed without prejudice are his deliberate-indifference-to-safety and deliberate-indifference-to-medical-needs claims; his failure-to-intervene, *Monell*, and abuse-of-process claims; his negligent hiring, training, supervision, and retention claim; his negligence and negligence per se claims against Sergeant Mateo; and his IIED claim against the individual Defendants. Plaintiff's procedural due process claim is dismissed with prejudice as to the asserted interest in his jail work assignment and wages, and without prejudice as to the asserted interest in property or funds taken as penalties.

Plaintiff may file an Amended Complaint on or before September 8, 2026, which will become the operative pleading in this action. If Plaintiff does not timely amend, the claims

dismissed without prejudice shall be deemed dismissed with prejudice and the action shall proceed on Plaintiff's negligence claim against the County. In either event, County Defendants shall respond on or before October 9, 2026.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 12.

Dated: August 4, 2026
White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge